**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

HEATHER WYATT, as Administratrix of
the Estate of Aubreigh Wyatt and HEATHER
WYATT, INDIVIDUALLY AND AS PARENT/
GUARDIAN OF AUBREIGH WYATT                                          PLAINTIFF

VS                                                    CAUSE NO: 1:25-cv-00098-TBM-RPM

OCEAN SPRINGS SCHOOL DISTRICT, ET AL.                              DEFENDANTS

---

**MEMORANDUM BRIEF IN SUPPORT OF THE RESPONSE TO PLAINTIFF'S
SECOND MOTION FOR LEAVE TO AMEND COMPLAINT**

---

Comes Now, Ocean Springs School District, Ocean Springs Board of Trustees and "Ocean

Springs School District Superintendent," ("the School District" or "the District") and serves this

Response to Plaintiff's second Motion for Leave to Amend the Complaint, Doc. No. 30.   In

furtherance thereof, the School District state unto the Court as follows:

## INTRODUCTION

The School District has filed a motion to strike this unauthorized motion, filed after the

deadline for doing so expired. See Doc. Nos. 31 and 32.   Out of an abundance of caution, this

Response in opposition thereto is filed in the event the Court elects not to strike the untimely

pleadings filed after the deadline expired and without leave of Court.

## REFERENCES AND METHODS OF NOTATION

In order to distinguish between the various proposed second amended complaints, the School

District refers to the proposed pleading to which this opposition is directed, Doc. No. 30-1, as the

second proposed second amended complaint, or "**PSAC2**."

## LIMITATION OF AUTHORITY CITATION

Because of the necessary briefing length, the District will limit citation to authority to a single definitive cite, unless it is an unusual point or law rarely discussed. Where a claim is asserted under both state and federal law, a single citation to state and federal authority is provided. Should the Court wish additional legal authority upon any point, it shall be provided upon receipt of direction to provide such.

## MATTERS ALREADY BRIEFED, INCORPORATION BY REFERENCE

Because briefing will be necessarily lengthy, the School District will not repeat dispositive discussion and legal citation for matters already fully addressed in other filed pleadings. It will instead incorporate those by reference as if fully set forth here, so as to avoid imposing on the Court by saying the same thing, with the same authority, a third time. This specifically includes the following:

- Legal authority and discussion precluding suit against employees in their official capacity or their personal capacity under state law or Title IX, see Doc. No. 33, pp. 11-13;

- Legal authority and discussion prohibiting state law claims predicated upon Aubreigh Wyatt's suicide, Doc. No. 7, pp. 11-12, and Doc. No. 33, pp. 26-27;

- Legal authority and discussion prohibiting state law causes of action based upon purported breaches of state statutes, rules, regulations or ordinances, Doc. No. 7, pg. 11, Doc. No. 33, pg. 14;

- Legal authority and discussion prohibiting filing a lawsuit on behalf of a deceased person, Doc. No. 7, pp. 6-7; and Doc. No. 33, pp. 13-14;

- Plaintiff's continued attempts to sue inanimate buildings as set forth in the caption of PSAC2, see Doc. No. 7, pg. 5, and Doc. No. 33, pg. 10;

- Plaintiff's continued attempts to sue the Board of Trustees (PSAC2, ¶ 197), Doc. No. 7, pg.3, and Doc. No. 33, pg. 10.

-2-

## THE MOTION FAILS TO MEET THE MANDATORY REQUIREMENTS FOR RELIEF

A motion to amend is required to actually state how the proposed pleading will cure the existing deficiencies. *Wells v. Texas Tech Univ.*, 2025 WL 673439, at *9 (5th Cir. Mar. 3, 2025), *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021), as revised (Nov. 26, 2021).[1] Failure to provide this explanation is itself grounds to deny amendment. *Id.*

The second motion (like the first) fails to meet this requirement. It does not address or even acknowledge the legal deficiencies set out in the motion to dismiss, nor does it advise the Court of how those deficiencies have been cured.  In fact, it creates entirely new ones while failing to fix the existing ones.

Per the Fifth Circuit, this alone is grounds to deny the motion.  But the Court need not rely solely on this.  The PSAC2 is deficient in so, so many additional ways.

## THE PSAC2 IS A PROHIBITED SHOTGUN PLEADING

The PSAC2 constitutes the quintessential shotgun pleading. The four most common types of shotgun pleading recognized are:

> (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint;"
> (2) "a complaint that [is] replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;"
> (3) "one that commits the sin of not separating into a different count each cause of action or claim for relief;"
> (4) "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."

---

[1]"[A] movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects."

*Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015), *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015)(adopting *Weiland* definitions).

The PSAC2 manages to include all of these.

The bulk of the allegations are incorporated by reference. Doc. No. 30-1, ¶¶ 148, 181, 185, 191.[2]  It asserts all undifferentiated "defendants" are responsible for all actions and under all claims, even in the face of physical or legal impossibility.  Doc. No. 30-1, e.g.,  ¶¶ 39, 60, 111, 128, 134, 151, 165, 172, 175, 178, 183, 193.[3]

For example, it asserts claims against Superintendent Michael Lindsey in his official capacity for events which purportedly occurred in 2020, more than three years **before** he even became the superintendent.  It asserts Jennifer Necaise was the principal and assistant principal of the upper elementary school and the middle school, when she never worked at the upper elementary school.

---

[2]Plaintiff did not incorporate by reference under the first three counts asserted in the PSAC2. Plaintiff does appear, however, to have copied and pasted in these causes of action (as well other content) from complaints filed in other litigation, including the particular unique word usage of such, for *Adams v. Pascagoula-Gautier School District,* Southern District of Mississippi, Cause No. 1:25-cv-40-LG-BWR; *Green v. Pascagoula-Gautier School District*, Circuit Court of Jackson County, Mississippi, Cause No. 21-11.  This hodgepodge of copy and paste insertions does contribute substantially to overall confusion, errant references, assertion of legally prohibited claims, and general lack of clarity and comprehensibility of the PSAC2. The copy-and-paste insertions are generally easy to spot; they are often drafted in a different font.  Sometimes Plaintiff failed to substitute her name or her daughter's name for the name of the plaintiff in some other case.  See, e.g., PSAC2 ¶ 36.  Some contents simply make no sense, such as ¶ 114.

[3]The undifferentiated "defendants" infects fairly very nearly every paragraph of the PSAC2.  The School District might as well say, "See Doc. No. 30-1." However, specific provisions are selected here for the Court's ease of reference to illustrate the shotgun pleading point.

It asserts the same with respect to Melissa Arnold, but Ms. Arnold never worked at the upper elementary school.[4]  Doc. No. 30-1, ¶¶ 12, 20, 23.

The PSAC2 also alleges every single current and former employee of the school district held the same responsibilities for all things, at all times, at all schools, even the ones at which they did not work.  It further necessarily alleges with its undifferentiated "defendants" that ten year-old girls worked at the District, held policy-making authority and had the duty and power to perform (or not) federal law.    These are only a few examples, but these examples are the reasons why shotgun pleadings against undifferentiated "defendants" are prohibited.

And it includes, again, an entire introductory section regarding the ills of social media upon young people, which is not a cause of action, is unrelated to any element of a cause of action, and for which the School District cannot be held liable, constituting shotgun pleading "sin" (2), supra.

Shotgun pleadings are subject to dismissal all by themselves for the fact of being a shotgun pleading.  *Crihfield v. Bellsouth Telecommunications, LLC*,  2025 WL 875806, at *4 (S.D. Miss. Mar. 20, 2025).  As such, the PSAC is futile.

But this is not the only dispositive flaw in the PSAC.  It certainly adds, however, to the overwhelming grounds of futility and denial of the motion to amend.

---

[4]There is also the additional problem created by Plaintiff's shotgun pleading–that she is alleging all of the individuals held the same job titles simultaneously and at multiple different schools.  According to the Plaintiff all of the individual School District employees were simultaneously the principal and assistant principals at both the upper elementary and middle schools.  This would mean each school had twelve (12) principals at the same time, all twelve (12) were simultaneously the assistant principals, and all twelve (12) were both principals and assistant principals at two different schools simultaneously, including the current superintendent, Mr. Lindsay, who was simultaneously the principal and assistant principal at two different schools while also the District superintendent.  Doc. No. 30-1, ¶¶ 12-23. The School District believes the facial implausibility and complete impossibility of such is readily apparent to the Court.

## THE PSAC2 IS INCOMPLETE AND THE MOTION TO AMEND AND PSAC2 DO NOT CORRELATE

The PSAC2 refers to exhibits, but no exhibits are attached. Doc. No. 30-1, ¶ 43, 45, 47, 54, 55, 57. And just like the first untimely motion, this untimely motion asserts that the Tort Claims Act notice of claim is being substituted as Exhibit "A," and the exhibits attached to the operant complaint are being shifted down, respectively, as Exhibits "B" to "H." Doc. No. 30, pg. 16, ¶¶ 39-40.[5]

Except there is no Exhibit "A" attached to the PSAC2, and the purported exhibits are unconnected to the contents of the PSAC2. For example, while the motion says Exhibit "A" is the Mississippi Tort Claims Act ("MTCA") Notice of Claim letter served upon the District, the PSAC2 says Exhibit "A" is documentation showing Plaintiff attempted to resolve problems with the other parents. Doc. No. 30-1, ¶ 43. This has nothing to do with the MTCA.

Plaintiff has never, in fact, attached the Notice of Claim to any pleading, ever. Plaintiff is relying upon an exhibit she has never entered into the record, nor asked the Court to allow in.

Also, like the first motion and PSAC, the second motion to amend and the PSAC2 suffer the same crippling defect as the first motion and the first PSAC–the contents of each are wholly disconnected from each other. For example, what the motion says appears in paragraph 45 of the PSAC2 is not what actually appears in paragraph 45 of the PSAC2. They are actually completely unrelated.

---

[5]The motion's numbering of its own paragraphs is very inconsistent, skipping from numerical to alpha then back again; ending a page at one designation then starting the next page with an illogical change from alpha to numeric or skipping up or down, e.g., pg. 7 proceeds from "k" to "n," skipping "l" and "m." Page 12 starts with the paragraph "s(c)" carrying over from pg. 11, then resumes with paragraph "b" again, ends with paragraph "d," then page 13 beings with paragraph "2." Because of this inconsistency, both page numbers and purported paragraph designations are provided to the Court. Most things can only be found with a Ctl+F word search.

This disconnect persists throughout the second motion to amend to amend and its exhibit, the PSAC2.  Only this single specific example is provided so as to limit briefing wherever possible. Pretty much nothing the motion says is contained in the PSAC2 exists in the PSAC2, either *at all* or in the purported identified location. Going paragraph by paragraph would unnecessarily extend this briefing.

## THIS ATTEMPT AT AMENDMENT IS FUTILE

Although Rule 16(b) applies to the present motion, and unquestionably Plaintiff failed to comply with that Rule, it would not matter.  Whatever favor Rule 15 provides disappears when it is clear amendment is futile.  An amendment is futile when the proposed complaint fails to state a claim upon which relief may be granted.  *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).

A complaint fails to state a viable claim for relief when it fails to meet the pleading requirements.  This may be either because the claims asserted are not legally cognizable, or the complaint fails to plausibly allege an otherwise cognizable cause of action.  *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001), *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016), respectively.

Conclusory allegations and legal conclusions masquerading as facts do **not** meet this requirements. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)**.** Here, the PSAC2 fails on all counts.

### Plaintiff's Limited "Facts" Are Contradicted by the Exhibits to the Operant Complaint

With respect to the School District, the PSAC2 is almost exclusively conclusory allegations and legal conclusions.  Where specific facts are alleged, they directly contradict the contents of the documents attached as exhibits to the operant complaint.

And when that happens, the allegations must–as a matter of law–be disregarded.  The documentation controls. *Stevenson v. Toce*, 113 F.4th 494, 502-03 (5th Cir. 2024),[6] *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004),[7] *Bryant v. Rosenberg*, 2025 WL 906243, at *3 (S.D. Miss. Mar. 25, 2025).

## PLAINTIFF PROFOUNDLY MISUNDERSTANDS BOTH THE FOURTEENTH AMENDMENT AND § 1983

While lacking order or clarity, the PSAC2 does make one thing abundantly clear–the Plaintiff has a profound and legally dispositive misunderstanding of the law she is attempting to invoke.

42 U.S.C. § 1983 is not itself a source of substantive rights; it prohibits nothing and it cannot be breached or violated.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994). It is the procedural vehicle by which a litigant may press a claim for violation of federal constitutional rights or rights secured elsewhere by federal law, such as federal statutes, and that's it. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).

The initial elements of such causes of action require a complaint set out:  (1) a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trustees*, 855 F.3d 681, 687 (5th Cir. 2017).

### A Protected Right and What the Fourteenth Amendment *Doesn't* Do

The Fourteenth Amendment to the United States Constitution does, of course, provide certain rights–the right to equal protection under the law, the right to due process of law.  And, of course,

---

[6]"If an exhibit to a complaint contradicts an allegation in the complaint, the exhibit controls."

[7]"If such an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls."

purported violations of the rights recognized as falling within the Fourteenth Amendment would be redressable via § 1983 action.

What the Fourteenth Amendment ***doesn't do*** is impose affirmative obligations or duties to act upon state actors. It is a *restraint* on state action, it does not require state actors to affirmatively undertake any action:

> But nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs*., 489 U.S. 189, 195 (1989). It is thus an error of law every time the PSAC2 asserts the School District "failed" to act or to do something, i.e., the purported "failure" to "use proper care to uphold constitutional rights and privileges." There can never be a breach of a duty that does not exist.

And the Supreme Court has been exceptionally clear there are no more rights that those expressly and particularly identified by federal law:

> We now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983. Section 1983 provides a remedy only for the deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. Accordingly, it is rights, not the broader or vaguer "benefits" or "interests," that may be enforced under the authority of that section.

*Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). There are thus no *implied* rights, or "interests" that may be pursued. A plaintiff cannot create their own "rights" and demand they be vindicated, such as the "right" to an "atmosphere conducive to learning." This is a right Plaintiff has wholly

fabricated; it doesn't exist.  Only those rights "unambiguously conferred" by federal authority qualifies.

The only federally recognized protected right identified in the PSAC2 is the right to bodily integrity. The non-existent  "rights" are discussed below in the interests of completeness.

## Color of Law

The second mandatory element requires the person who purportedly violates a federally protected right be acting under color of law.  Actions of private citizens do not meet the definition of "under color of law:"[8] **"The Fourteenth Amendment applies to acts of governmental entities, not to acts of private persons**.*"  Mitchell v. Cent. Bank & Tr.,* 49 F.3d 728 (5th Cir. 1995). See also, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982).[9]

Thus, as a general proposition, one private citizen cannot violate the civil rights of another private citizen. One private citizen may be rude, obnoxious or even violent with another private citizen and this may violate state tort or criminal law, these are not violations of the Fourteenth Amendment absent a recognized exception.

---

[8] "A person acts under color of state law if he misuses power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. Under 'color' of law means under 'pretense' of law. Acts of officers performing their official duties are included whether they hew to the line of their authority or overstep it, but acts of officers in the ambit of their personal pursuits are generally excluded." *Bustos v. Martini Club Inc*., 599 F.3d 458, 464 (5th Cir. 2010)(internal punctuation omitted).

[9]"As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of the fact that "most rights secured by the Constitution are protected only against infringement by governments," *Flagg Brothers*, 436 U.S., at 156, 98 S.Ct., at 1733. As the Court said in *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 349, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974):
> "In 1883, this Court in the *Civil Rights Cases*, 109 U.S. 3 [3 S.Ct. 18, 27 L.Ed. 835], affirmed the essential dichotomy set forth in [the Fourteenth] Amendment between deprivation by the State, subject to scrutiny under its provisions, and private conduct, 'however discriminatory or wrongful,' against which the Fourteenth Amendment offers no shield."

The PSAC2's shotgun pleading necessarily though incorrectly asserts private citizens can violate another's Fourteen Amendment rights, including four minor girls apparently commencing at the age of ten, who violated Aubreigh Wyatt's right to bodily integrity. If this is actually what Plaintiff intended to assert, it is legally impossible in the absence of a recognized exception to the law. This "right" does not exist when applied to private citizen conduct.

While undersigned counsel does not represent the minor girls or their parents, this is discussed because Plaintiff appears to be trying to assert an exception via a conspiracy claim, discussed below. Given the shotgun nature of the pleading, this is merely an assumption but it is discussed in the interest of completeness.

**Required Connection Between Alleged Violation and Person Acting Under Color of Law**

For each named defendant, a complaint *must* allege and set forth substantive factual support for both elements–one actor violated a constitutional right and that same actor did so under color of law.

The pleading requirements are *not* met when a complaint alleges Private Citizen Defendant committed a particular act while Public Entity Defendant is clothed with state authority. It does not matter if Defendant A's conduct would violate a protected right if committed by Defendant B. One cannot take two independent defendants, smash them together and call it a day.

That isn't how the law works. But that is exactly how the PSAC2 proceeds.

"The individual officers charged in this suit are entitled to specific recitals of the wrong each is alleged to have perpetrated on each plaintiff." *Lynch v. Cannatella*, 810 F.2d 1363, 1377 (5th Cir. 1987).

-11-

**Nowhere** within the PSAC2 does Plaintiff allege any employee of the School District touched Aubreigh Wyatt or in any way otherwise infringed upon her person. **Nowhere** within the PSAC2 does Plaintiff allege the School District has an official policy or established custom of encouraging or allowing *employees* to violate students' bodily integrity.

Instead, the PSAC2 alleges the School District allowed or failed to stop Aubreigh Wyatt's peers from invading her person. But that does not violate any protected right. As above, the Fourteenth Amendment is a *restraint* on state action/actors; it does not compel the state to affirmatively act. Thus, there is **no** duty to prevent one private citizen from being mean to another private citizen. See *DeShaney* and *Gonzaga*, supra.

The only exception to this rule of law is the special relationship exception.[10] A state creates a special relationship between itself and a private citizen when it takes the private citizen into its custody and thus prevents that citizen from caring for themself and providing their own basic needs. *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 856 (5th Cir. 2012).

The Fifth Circuit recognizes only three circumstances which create special relationships: (1) incarcerated prisoners; (2) involuntary commitment to a mental health facility; (3) children in foster care. *Id.* None of these apply to the PSAC2.

---

[10]Some other circuits do recognize an additional exception, the "state-created danger" exception and it appears Plaintiff is at least half-heartedly attempting to claim such. Doc. No. 30-1, ¶¶ 116, 131, 132. "Created a danger," "failed to take corrective action," "shocks the conscience," "created the opportunity" for others to violate a protected right; these are all the buzzwords and phrases associated with a "state-created danger" theory. The Fifth Circuit has repeatedly rejected the "state-created danger" exception and it is not a cognizable theory here. *Doe v. Columbia-Brazoria Indep. Sch. Dist. by & through Bd. of Trustees*, 855 F.3d 681, 688 (5th Cir. 2017), *Est. of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 1002 (5th Cir. 2014), *Whitley v. Hann*a, 726 F.3d 631, 639, n.5 (5th Cir. 2013). Thus, if indeed Plaintiff intended to invoke this theory, it is legally prohibited in the Fifth Circuit. If she did not, the allegations are surplusage intended to invoke pity, passion or bias, which is also a prohibited endeavor.

The Fifth Circuit has been extremely clear there is **no** special relationship between a school district and its students, nor are there any exceptions to this:

> We reaffirm, then, decades of binding precedent: a public school does not have a *DeShaney* special relationship with its students requiring the school to ensure the students' safety from private actors. Public schools do not take students into custody and hold them there against their will in the same way that a state takes prisoners, involuntarily committed mental health patients, and foster children into its custody. Without a special relationship, a public school has no constitutional duty to ensure that its students are safe from private violence.

*Id.* at 857-58 (internal citations omitted).

Again, there are no exceptions to this rule of law. It is not dependent upon any particular characteristics of the student, the situation or any purported knowledge on a school district's part. There is no sliding scale, no "circumstances" to consider, nor any discretion. It's just the law:

> The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.

*DeShaney,* 489 U.S. at 200.

Because this is the law, has been the law for quite some time, the PSAC2's allegations the School District failed to prevent other students from bullying, hitting, mocking, "sexually degrading" or any of the other many highly inflammatory words Plaintiff chose to deploy in the PSAC2 are legally barred as grounds for liability. So, too, are the allegations the School District knew about these events but failed to act.[11]

In sum, the PSAC2 fails to identify any unambiguously conferred protected right the *School District or any employee* thereof violated. The Fourteenth Amendment imposes no affirmative duty

---

[11]Given the well-established nature of this long-standing law, it is unclear why Plaintiff would assert this in the PSAC2, if she had complied with her mandatory obligation to perform an adequate search of the law to ensure the claims asserted are warranted by existing law.

or obligation to prevent private citizens from imposing on Aubreigh Wyatt's person. This is a fatal defect that cannot be fixed by any number of amended pleadings for a plaintiff may never create their own rights.

## "RIGHTS" THAT DO NOT EXIST

As noted, the PSAC2 includes allegations of multiple "rights" Plaintiff claims were violated, but which do not exist. These include:

- There is no federally protect right to, nor creation of duty to, provide any level of safety or security to private citizens. *DeShaney*, 489 U.S. at 195.[12]

- There is no federally protected right to an education, any type of education or type of educational "environment." *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 458 (1988), *Plyler v. Doe*, 457 U.S. 202, 223 (1982). Thus, there is no protected right to, "an atmosphere conducive to learning" (Doc. No. 30-1, ¶ 110).

- There is no federally protected right to be free from negligence. Negligence of any kind or asserted flavor ("negligence per se," "reckless disregard," etc.) does **not** create a viable cause of action pursuant to § 1983. *Elizondo v. Livingston*, 638 F. App'x 392, 393 (5th Cir. 2016), *Terry v. Blackerby*, 582 F. App'x 288, 289 (5th Cir. 2014), *Chapman v. Pace*, 353 F. App'x 955, 957 (5th Cir. 2009). The allegations of negligence of some stripe permeate the entirety of the PSAC2; it is alleged against all defendants in all things.

- Consistent with the above, there is no federally protected right to enforcement of state statutes, rules or regulations (e.g., Doc. No. 30-1, ¶¶ 113, 121). *Hill v. Walker*, 718 F. App'x 243, 250 (5th Cir. 2018). *Jones v. Lowndes Cnty., Miss.*, 678 F.3d 344, 352 (5th Cir. 2012), *Black v. Warren*, 134 F.3d 732, 734 (5th Cir. 1998), *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996), *Brown v. Texas A & M Univ.*, 804 F.2d 327, 335 (5th Cir. 1986). (Doc. No. 30-1, e.g., ¶¶ 61, 64, 121, 122, 167).

- There is no federally protected right to be free from "verbal abuse." *Wyatt v. Fletcher*, 718 F.3d 496, 504 (5th Cir. 2013). See also, *Avila v. Harlingen Consol. Indep. Sch. Dist.*, 2021 WL 5919331 (S.D. Tex. Dec. 15, 2021). Even if the PSAC2

---

[12]"But nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security."

-14-

had alleged the purported verbal abuse had been perpetrated by a School District employee rather than by Aubreigh Wyatt's peers, it would not matter for there is no such federally protected right.

- There is no federally protected right to be free of "emotional distress" or "anguish," or any other state tort-law form of allegation (Doc. No. 30-1, ¶¶ 110, 112). *Shinn on Behalf of Shinn v. Coll. Station Indep. Sch. Dist.*, 96 F.3d 783, 786 (5th Cir. 1996) *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 172 (5th Cir. 1985). This necessarily includes claims of scorn, ridicule, humiliation. *Mowbray v. Cameron Cnty., Tex.*, 274 F.3d 269, 277 (5th Cir. 2001), and injury to reputation. *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990).

Because none of the above are protected "rights," the allegations regarding them and the School District's purported failure to protect them or prevent Aubreigh Wyatt's peers from abusing them fail to state a claim upon which relief may be granted. Because these are matters of law, not fact, no amount of amendment will cure the defects, rendering any amendment futile as a matter of law.

## SEXUAL HARASSMENT UNDER THE FOURTEENTH AMENDMENT

The PSAC2 does not identify any acts of sexual harassment. It just conclusorily asserts it occurred and that's it. For this reason alone, the PSAC2 fails, as it fails to meet the minimum pleading requirements.

Additionally, it does not allege anyone from the School District sexually harassed Aubreigh Wyatt, even in a cursory fashion. What the PSAC2 continues to assert is the School District didn't stop Aubreigh Wyatt from being bullied by her peers.

As above, the Fourteenth Amendment imposes no duty or obligation on state entities to intervene, protect or prevent the private violence one private citizen inflicts upon another (assuming it ever occurred). See *Davis*, supra.

This includes sexual harassment.  *Thompson as Next Friends of ACD v. Pass Christian Pub. Sch. Dist.*, 2023 WL 2577232, at *5 (S.D. Miss. Mar. 20, 2023).[13]  This claim is thus barred as a matter of law.

As such, on this ground as well, the PSAC2 fails to state a claim upon which relief may be granted.  As this is barred as a matter of law, no amendment will cure the defect, rendering any amendment futile.

## PROCEDURAL DUE PROCESS

Plaintiff asserts in ¶ 111 of the PSAC2 an allegation of violation of the right to procedural due process of law.  However, this is the only such reference; they do not appear anywhere else in the PSAC2, nor does it identify any process or procedure of law the School District failed to provide.  The complaint thus fails to meet the minimum pleading requirements, fails to state a claim upon which relief may be granted and this requested amendment is futile.

## CONSPIRACY

Due to the shotgun pleading, it is impossible to discern who was supposed to have conspired with whom, or what specifically those unidentified persons conspired to do.  The result is the allegation that School District officials (presumably the superintendent, but not necessarily)  met with ten year-old girls back in 2020, and entered an affirmative agreement to violate Aubreigh

---

[13]"The right to be protected by the state from private violence is limited and rests on substantive due process." *Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d at 688. For this reason, ACD's claim that the defendants should have protected him from his teammate's bullying can only be considered as a substantive due process claim, not another form of Fourteenth Amendment claim. See id. As a result, Plaintiffs' purported procedural process, equal protection, and Fourteenth Amendment sexual harassment and sexual discrimination claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6)."

Wyatt's right to bodily integrity, and every alleged act of physical bullying thereafter by those ten year-old girls was in furtherance of that agreement.

This is, of course, facially absurd.[14]  It is, however, one of the many things the PSAC2 necessarily asserts by affirmatively pleading all undifferentiated "defendants" engaged in all conduct, all actions, and everyone conspired with everyone else to do everything.  This alone fails to state a claim upon which relief may be granted, rendering the PSAC2's requested amendment futile.  But that isn't the only dispositive defect.

To the extent the PSAC2 intends to assert the School District employees conspired with each other, or other unnamed District employees, for any reason or any purpose, this is barred by law.  It is well-established under both federal and state law that an entity is incapable of conspiring with itself, including specifically school districts and their employees.  *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994), *Orr v. Morgan*, 230 So. 3d 368, 375 (Miss. Ct. App. 2017).

To the extent the PSAC2 intends to state the School District/District employees conspired with ten year-old girls, or their parents, or both, the complaint fails to meet the minimum pleading requirements and therefore fails to state a claim upon which relief may be granted.

The elements of civil conspiracy under federal and state law are essentially identical: (1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, [and] (4) ... damages to the plaintiff as

---

[14]It is highly questionable whether either state or federal law recognizes the legal capacity of a ten year-old to engage in conspiracy.  Certainly the PSAC2 fails to identify any authority supportive of the notion.

a proximate result. *Orr*, 230 So. 3d at 375 (Miss. Ct. App. 2017), *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.,* 869 F.3d 381, 389 (5th Cir. 2017).[15]

Simply *saying* a conspiracy existed is insufficient as a matter of law: "Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987). See also, *Lofton by & through Leary v. Franklin Cnty., Mississippi,* 2023 WL 1999489, at *5 (S.D. Miss. Feb. 14, 2023).

Noted absurdities aside, the PSAC2 fails to provide any facts to support any of these mandatory elements. There are conclusory statements and legal conclusions aplenty (See, e.g. Doc. No. 30-1, ¶¶ 128 and 129), but no facts.

As such, this claim–asserted under both federal and state law–fails to state a claim upon which relief may be granted and amendment is futile.

### ATTEMPTED *MONELL* CLAIMS

The PSAC2 repeatedly uses the words and phrases such as "course of conduct," "implemented a policy," "custom," and "policy, practice and custom." This is presumably an attempt to assert a claim for municipal liability against the School District pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)*.* Again, this is merely a guess, given the shotgun nature and opacity of the PSAC2. But according to ¶ 114 of the PSAC2, it appears Plaintiff is

---

[15]As a salutary reminder for Plaintiff, there is no such thing as "federal common law." All federal law must have a source creating it, either the Constitution or federal statute. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Here, the statute applicable to federal law claims of civil conspiracy is 42 U.S.C. § 1985, with subsection (3) addressing claims of conspiracy to deprive another of their civil rights.

attempting to assert the School District violated Aubreigh Wyatt's right to bodily integrity by failing to stop private citizens from inflicting alleged importunities on her person.

In *Monell,* the Supreme Court recognized municipalities may be sued under § 1983 for violations of federal rights they commit. *Monell* is the only method of asserting such claims against a municipal entity. There are no other methods.

The mandatory elements of a *Monell* claim are: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Monell,* 436 U.S. at 694.

Except no one from the School District is accused of violating Aubreigh Wyatt's bodily integrity. Nowhere within the PSAC2 does Plaintiff allege as much, or provide any facts to support such.

Thus to even arguably allege a single element of this cause, Plaintiff must allege and factually support two things–(1) Aubreigh Wyatt had a constitutionally protected right to be free of physical contact *by her peers*, i.e., that the Fourteenth Amendment applies to the conduct of private citizens; and (2) that Aubreigh Wyatt had a constitutionally protected right to expect the School District to protect and prevent importunities inflicted by her private-citizen peers.

As set forth above, there are no such rights. No protected right, no *Monell* claim, and no need to extend briefing by discussing the remaining elements (which the PSAC2 also fails to plead).[16]

Either the School District violated Aubreigh Wyatt's bodily integrity or it didn't. Only the former is redressable via *Monell*. The latter is not. In the absence of any facts to support the

---

[16]As above, the only exception is the existence of a conspiracy between the private citizens and the municipality, which the PSAC2 fails to adequately or plausibly plead.

requirement that the School District, or anyone employed by the School District personally and directly violated Aubreigh Wyatt's right to bodily integrity, the PSAC2 fails to state a claim upon which relief may be granted and amendment is futile.

## TITLE IX

### Demonstrably Inaccurate Representations of Law

Plaintiff's attempt to assert a Title IX claim has been repeatedly addressed and shown to violate extant law on several occasions. Plaintiff's current attempt, via the PSAC2, not only continues to fail, it actively and affirmatively asserts known misrepresentations of law and fact. The misrepresentations of fact are predicated primarily upon **Plaintiff's own documentation**, attached to the operant complaint. Plaintiff therefore knows her assertions of fact are false and the only inference to be drawn is intentional misconduct.

### Title IX Applies ONLY to Discrimination Based on Sex

Plaintiff increases the legal inaccuracy of the attempt to assert a Title IX claim by asserting, "Title IX of the Education Amendment of 1972 makes it unlawful to create any intimidating, hostile, offensive, and abusive school environment." Doc. No. 30-1, ¶ 150.

No, it does not. This is emphatically, demonstrably false, and can be shown to be knowingly asserted to be a false statement. Title IX prohibits, and ***only*** prohibits, discrimination because of sex. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 651-52 (1999).

That's it. It doesn't apply to race, religion, perceived disability, mean-spiritedness for its own sake, or anything else. It does **not** apply to "any intimidating, hostile, offensive, and abusive school environment."

It **applies only to discrimination because of sex.**

-20-

Plaintiff knows this. Plaintiff has known this for months. It was pointed out, supported with Supreme Court authority, **repeatedly**, in prior briefs, beginning in April, 2025. And given the obligation upon all parties and/or their counsel to actually check the law before filing a pleading (*Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991)), that Plaintiff has the audacity to make such an obviously false and frivolous statement of law now is indicative of intent to misrepresent the law and mislead the Court.

### Title IX Does NOT Apply to Bullying

Plaintiff continues to assert grounds for liability that **are expressly prohibited by the United States Supreme Court.** Title IX does not apply to, nor provide a remedy for, purported peer bullying, even when it encompasses gender differences. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 651-52 (1999).

This includes (but is not limited to) pushing, shoving, name-calling, verbal teasing, banter or similar conduct. *Id.* Whether or not the recipient is sincerely upset by such does not alter the law; this does **not** constitute discrimination on the basis of sex. *Id.*

This was reinforced by the Fifth Circuit just **barely two weeks ago**. *M.K. by & through Koepp v. Pearl River Cnty. Sch. Dist.*, 2025 WL 2017274, at *4 (5th Cir. July 18, 2025). So this is neither new law nor a one-off. Plaintiff simply ignores it.

Plaintiff's choice to violate her duty of candor to the Court does not, however, alter the law. Ignoring the law does not change it, but Plaintiff's lack of candor in failing to acknowledge it, continuing to assert demonstrably invalid "claims," does reinforce the lack of good faith displayed by this Plaintiff.

**"Based On Sex" Is A Mandatory Element Plaintiff Is Required to Plead**

As has been repeatedly pointed out, a mandatory essential element of a Title IX claim is conduct **because of sex**.  *Davis,* 526 U.S. at 651-52. For the present matter, that means conduct motivated by Aubreigh Wyatt being a girl, *because* she was a girl.

This is not optional.  It is not discretionary.  There is no sliding scale here either–this does not become less mandatory if a complaint alleges sufficiently severe bullying unmotivated by sex. It is the law.  It is *always* mandatory.

Discrimination on the basis of sex is the *sine qua non* of a Title IX sexual harassment case, and "a **failure to plead that element is fatal**."  *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist*., 647 F.3d 156, 166 (5th Cir. 2011).  See also *Wells v. E. Baton Rouge Sch. Sys*.,  2025 WL 1514108, at *2 and n. 12,  (5th Cir. May 28, 2025).

The PSAC2 completely skips this. **Nowhere** within the PSAC2 does Plaintiff allege, even conclusorily, that anyone acted specifically because Aubreigh Wyatt was a girl.  Nowhere.  It does not exist.  Plaintiff just asserts bad things occurred, apparently for no reason whatsoever.

And Title IX does not apply to that.  It just doesn't.  As the PSAC2 fails to even allege, and further fails to provide any facts supportive of, the *sine qua non* of a Title IX action, per the Fifth Circuit Court of Appeals, it fails on its face to state a claim upon which relief may be granted and this amendment is futile.

In fact, any amendment based upon purported bullying–regardless of how long Plaintiff claims it went on or how many melodramatic adjectives are employed to describe it–will never state a claim upon which relief may be granted.  Any amendment on these allegations are therefore futile.

-22-

**The PSAC2 Fails to Identify Any Sexual Assault**

Although repeatedly referencing sexual assault (See, e.g., Doc. No. 30-1, ¶¶ 41, 61, 65, 89, 131 and 139), the PSAC2 doesn't actually identify any sexual assault that occurred, by anyone, at any point in time.  It is impossible for the Court to determine whether a sexual assault occurred, by whom or when, in the absence of any actual facts.[17]

However, giving Plaintiff the benefit of the doubt, in light of her reference to the exhibits attached to the operant complaint (See, e.g., Doc. No. 30-1, ¶ 54), the contents of those documents are assumed to be the "sexual assault complaint" to which the PSAC2 refers.

**The Sexual Assault Allegation Under Title IX Is Insufficient As a Matter of Law**

The allegations of Doc. No. 3, PDF pp. 31-32 do arguably allege an assault, if the event actually occurred.  However, those same documents, in conjunction with applicable federal law and rule, establish the School District did not violate Title IX.

In order to initiate a Title IX complaint, and thus trigger a Title IX investigation, a formal, written complaint is required.  34 C.F.R. § 106.45(a)(1).  There is no such thing as an informal Title IX complaint; verbally complaining won't do.  A complaint must be formally made, in writing.

Aubreigh Wyatt did file a written, formal complaint (Doc. 3, PDF. Pp. 30-31) then **withdrew** it eighteen hours later.  Doc. No. 3, PDF pg. 37.  Of that eighteen hours, the District was closed for fifteen, leaving a mere three hours in which to commence and perform an investigation.

---

[17]As previously noted, "sexual assault" covers a great deal of ground, including an avuncular kiss on the forehead.  A description of the purported event is therefore mandatory for a court to determine whether it has been adequately pleaded.

And that was the end of the Title IX matter as far as the School District's obligation to investigate. Once Aubreigh Wyatt withdrew the formal complaint, there was no longer an obligation to investigate. 34 C.F.R. § 106.45(d)(iii).[18]

Again, this is not new information or law to the Plaintiff. It has been repeatedly set out in multiple pleadings. While neither the Plaintiff nor her counsel are required to just take defense counsel's word for it, there exists the non-discretionary and independent duty to verify that current law permits the claims being asserted. See *Business Guides, Inc.,* supra.

This would necessarily include checking out legal authority cited by the opposing party, *especially* when that authority dispositively precludes or ends a purported claim.

That is the state of the law here. Plaintiff has failed to either acknowledge or plead in accordance with extant, binding law. This renders the PSAC2 deficient as a matter of law and no amendment will cure the defect, rendering any amendment futile.

### Title IX Includes No Presumption of Guilt

The PSAC2 appears to proceed upon the assumption the School District was obliged to believe a sexual assault had occurred simply because an accusation had been made and act accordingly.

The School District could not do so. Had it done so, it would have violated the very law Plaintiff seeks to invoke.

---

[18]In full candor disclosure, some courts within the Fifth Circuit have found the entire Federal Regulation section 106.45 unconstitutional due to the current definition of "sex" including gender identity and orientation. See, e.g., *Texas v. United States*, 740 F. Supp. 3d 537 (N.D. Tex. 2024). The questions of gender identity and/or orientation is not implicated here but disclosure is provided as the unconstitutionality has been applied to the entire section on the grounds individual provisions could not be isolated or severed.

-24-

The Federal Regulations applicable to Title IX expressly hold there is **no presumption** of misconduct.  Just the opposite.  There is a presumption no misconduct occurred. 34 C.F.R. § 106.45(b)(3).

Whatever inferences the PSAC2 intends to raise that the School District should have simply believed Aubreigh Wyatt because an accusation was made is not only legally incorrect, it is directly contradictory to applicable federal law and Rule, and would jeopardize the District's federal funding.[19]

### STATE LAW CLAIMS

The PSAC2 also attempts to assert state law claims.  As above, several have already been thoroughly discussed and supported by authority, repeatedly, and will not be repeated a third (or fourth) time.

The School District will therefore only discuss the newly advanced theories of state-law liability and the minimum general Tort Claims Act authority required to effectuate this briefing.

---

[19]It is also noted the PSAC2 contains what can only be described as intentionally false facts, such as the assertion the School District failed to establish procedures for "investigating, handling and reporting" Title IX complaints.  Plaintiff attached to the operant complaint the email wherein she was sent both the District policy and the District complaint form.  See Doc. No. 3, PDF pg. 34.  As Plaintiff herself put this into the record, she cannot claim ignorance of its contents or assert the absence of policy or procedure since she has both in hand and **entered it into the record.**

As Plaintiff Heather Wyatt was a teacher for Ocean Springs School District, and was required–as a term of employment– that she be familiar with the polices and procedures of the District, the suggestion now that she was unaware of the Title IX policies and procedures is extremely unlikely to be truthful.  This representation then can only have been intentionally forwarded to misrepresent facts and mislead the Court, particularly as Heather Wyatt signed off on an affirmation that she had reviewed the employee handbook and the sexual harassment agreement and policy as recently as 2023.

So, too, the allegation the Title IX complaint was "dismissed" is knowingly false.  Plaintiff's own email, entered into the record by her as an exhibit to the amended complaint, shows that is false.  The Title IX complaint was not dismissed, it was withdrawn by the Plaintiff before the School District could act on it.  See Doc. No. 3, PDF pg. 37.

Also, it is extremely unlikely the "entire student body" was in the same place at the same time to do anything.  This certainly appears to be out-of-control hyperbole in addition to an inaccurate statement.

**The Mississippi Tort Claims Act**

Mississippi law provides the State and its political subdivisions hold sovereign immunity from suit or liability.  Miss. Code § 11-46-3. The Mississippi Tort Claims Act ("MTCA") provides a *limited* waiver of that sovereign immunity. *Williams v. City of Batesville*, 313 So. 3d 479, 482 (Miss. 2021).

The MTCA does not waive all sovereign immunity for all things, only some thing.  And even when there is an initial waiver of sovereign immunity, immunity may be restored via the provisions of Code § 11-46-9.  *Simpson Cnty. v. McElroy*, 82 So. 3d 621, 624 (Miss. Ct. App. 2011).

Immunity is waived only for the torts of the political subdivision itself, or employees of such when the employee is acting within the course and scope of their employment. Miss. Code § 11-46-5(1).

An employee is **not** acting within the course and scope of employment and there is **no waiver** of immunity when the employee engages in conduct constituting, "fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations." Miss. Code § 11-46-5(2).

This was apparently of sufficient import to the Mississippi legislature that it enacted *two* statutes saying this. Miss. Code §§ 11-46-5(2) and 11-46-7(2).  They really meant it.  It is not optional, nor–as above–subject to a sliding scale of application.  This is just the law, and it is to be applied as written.

**Negligent or Intentional Infliction of Emotional Distress**

**Aubreigh Wyatt Cannot Assert Claims, Not Even Via "Next Friend," Nor Has Heather
Wyatt Pleaded the Legal Requirements for Such Claims**

As repeatedly discussed and supported with applicable, black letter and binding law incorporated herein by reference, Aubreigh Wyatt cannot assert any claims, not even via a next friend. One must actually be living at the time a complaint is filed to assert such claims. Thus, any and all purported state-law claims asserting emotional distress by Aubreigh Wyatt are barred by law.

Heather Wyatt has no claim for infliction of emotion distress, whether negligent or intentional.

Mississippi law is clear it does not recognize or authorize "second-hand" claims of infliction of emotional distress. One is either the object of the conduct inducing the distress, or one must be bystander as defined by state law.

To qualify as a bystander, the individual must be actually physically present to contemporaneously observe the event. Merely learning of it later does not suffice. *Entergy Mississippi, Inc. v. Acey*, 153 So. 3d 670, 673 (Miss. 2014), *Wilkerson by & Through Reel v. Allred*, 2024 WL 4022558, at *3 (Miss. Ct. App. Sept. 3, 2024), reh'g denied (Jan. 7, 2025).[20]

Heather Wyatt does not claim she was present during any action alleged in the PSAC2, nor that she personally witnessed any such action. On the contrary, the documents provided as exhibits

---

[20]So as to avoid unnecessary argument and confusion by the Plaintiff, it is reiterated that Plaintiff Heather Wyatt had to be physically present to view the purported event that was the cause of Aubreigh Wyatt's claimed emotional distress. Being told about it later does not qualify. Thus, for example, one claiming emotional trauma from their child being hit by another student must actually be present to witness first-hand their child being hit by another student.

to the operant complaint show all of Plaintiff's purported knowledge was second-hand reports from other people.  See Doc. No. 3, PDF pp. 20-43.[21]

As Plaintiff was not physically present, she fails to meet the requirements of bystander claims, and thus the claim for intentional infliction of emotional distress is barred by law.

But there is an additional reason this claim is barred.  Even when physically present, a bystander's claims are limited to events constituting negligence.  *Entergy,* 153 So. 3d at 673.  And that is not what the complaint alleges, as discussed immediately below.

### Malicious Torts of Employees Are Barred As Against the School District

As above, the MTCA expressly refused to waive sovereign immunity for malicious conduct of employees.  The School District cannot, as a matter of law, even be sued for such conduct, much less held liable. *Wilcher v. Lincoln Cnty. Bd. of Supervisors & City of Brookhaven, Mississippi*, 243 So. 3d 177, 186 (Miss. 2018).

Mississippi law holds claims of intentional infliction of emotional distress require malice. *Renfroe v. Parker*, 374 So. 3d 1234, 1242 (Miss. Ct. App.).[22]  Therefore, any act by any employee–though none are described in the PSAC2–which purports to constitute intentional infliction of emotional distress provides no remedy as against the employing entity.  Sovereign

---

[21]Since Plaintiff alleges this occurred during the school day, when she was on duty teaching at a completely different school, any amendment to assert she did personally witness anything would be at the very least highly suspicious and easily debunked with payroll records.

[22]"The supreme court has explained that torts in which malice is an essential element are not within the course and scope of employment, and therefore these intentional torts are outside the scope of the MTCA's waiver of immunity, and the MTCA does not apply. **Accordingly, any legal action against a governmental employee for claims of intentional infliction of emotional distress, assault, and battery must necessarily proceed against him or her as an individual.**"

immunity has *not* been waived and the entity can neither be sued nor held liable for such acts of its employees.

The shotgun PSAC2 fails to identify any actual, affirmative conduct by any School District employee but it is pretty clear Plaintiff asserts those unidentified actions were done intentionally and maliciously. See Doc. No. 30-1, ¶¶ 83, 106, 121, 171, 174, 201. Even when claiming negligence, the Plaintiff asserts the conduct was intentional. *Id.*, ¶ 171.

Given the legal bar to asserting such claims against the School District, the PSAC2 fails to state a claim upon which relief may be granted and amendment is futile.

## ASSAULT AND BATTERY

Plaintiff clearly does not understand what assault and battery are. An "assault" occurs when conduct occurs which creates a reasonable apprehension of imminent harmful or offensive contact. *Webb v. Jackson*, 583 So. 2d 946, 951 (Miss. 1991). "Battery" occurs when the harmful contact is made. *Id.*

This is the legal definition of both "assault" and "battery." There are no other legal definitions under Mississippi law.

Yet again, the PSAC2's shotgun nature and lack of differentiation makes it impossible to determine who is being accused of assault, of battery, or of both. This is a fatal pleading failure.

But making the assumption Plaintiff did not intend to assert pre-pubescent girls have a legal duty to "enforce disciplinary actions," *inter alia*, (Doc. No. 30-1, ¶ 180), the School District assumes the entirety of the PSAC2 entitled, "Claim 8–Assault and Battery," is directed toward it. Or possibly it and the private citizen adults sought to be added. Anything is possible, but the School District here speaks only for itself.

Nothing described here constitutes either an assault or a battery.  Not saying something the Plaintiff thinks ought to have been said is actually the opposite of an assault, and not laying hands on someone is the opposite of a battery.

And the PSAC2, again, contains no allegations anyone from the School District ever laid a single finger on Aubreigh Wyatt, or said anything to Aubreigh Wyatt to induce a reasonable fear of imminent harm/bodily contact by that, or any other, employee.

The allegation of condonation or ratification does not assist the Plaintiff.  The MTCA does not apply to the acts of private citizens, only political subdivisions of the State of Mississippi. *Flye v. Spotts*, 94 So. 3d 240, 245 (Miss. 2012). The School District cannot be sued, even on a theory of condonation or ratification, for the alleged acts of private citizens.

As a result, nothing in this purported cause of action is an assault, or a battery, or asserts a claim upon which relief may be granted.  As such, amendment is futile.

**The MTCA Does Not Waive Sovereign Immunity for the Criminal Acts of Employees**

It would, of course, be highly suspicious if Plaintiff changed course to now allege any employee of the School District actually laid hands upon Aubreigh Wyatt, or caused Aubreigh Wyatt to fear imminent bodily harm.

But even if Plaintiff were to do so, such would be futile as to the School District, for the MTCA expressly declined to waive sovereign immunity for criminal acts of employees, as set forth above.

Assault and battery are unquestionably crimes. Even if Plaintiff had alleged any employee of the School District had committed an assault and/or battery, which she has not, sovereign

immunity has not been waived for such acts by employees.  The School District can neither be sued nor held liable for such.

But, as above, that isn't the claim the PSAC2 asserts; it asserts the undifferentiated "defendants" failed to stop other undifferentiated "defendants" from committing those torts, which is neither an assault nor a battery.  Suit cannot be predicated upon an act never committed.

### "NEGLIGENCE UNDER MTCA" AND NEGLIGENCE

The vast majority of the "negligence" allegations *appear* to be asserting claims for Aubreigh Wyatt and the emotional distress it is claimed she incurred.  However, as above, such claims are affirmatively barred by Mississippi law, which requires a living plaintiff at the time suit is filed.

It also appears Plaintiff believes there are MTCA negligence claims and non-MTCA negligence claims to which the School District is subject.  Otherwise, the separate "negligence" causes of action[23] do not make sense, particularly in light of the shotgun "defendants." But, if so, Plaintiff is incorrect. There is the MTCA and *only* the MTCA.

The PSAC2 is again rather opaque as to what conduct Plaintiff is alleging the School District or any District employee performed.  But it is really clear as to the alleged "duties" the undifferentiated "defendants" breached, though it doesn't provide any facts.

It is also clear the "duties" Plaintiff seeks to impose upon the School District do not exist.

As this Court know, "negligence" has four essential elements, the first of which the existence of **a legally imposed duty**. *Carpenter v. Nobile*, 620 So. 2d 961, 964 (Miss. 1993).  It is the very first element and the first a plaintiff must prove before any other element even becomes relevant. *Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017).

---

[23]Doc. No. 30-1, "Claim Three-Negligence Under MTCA," and "Count 9–Negligence."

The requirement of a duty imposed by law is not discretionary or negotiable. The law *must* actually impose the claimed duty. In this way, plaintiffs are precluded from simply making up non-existent duties.

Here, the PSAC2 complains "the Defendants" "violated" their own policies, the state Department of Education regulations, and unidentified "laws of the State of Mississippi and the United States. (Doc. 30-1, ¶ 135). This has been repeatedly discussed and applicable, binding law provided, incorporated herein by reference as specifically set forth above, pg. 2.

Plaintiff also complains "the defendants" breached the duty "to provide safe learning environment and to protect her from foreseeable harm, including bullying, harassment, and sexual assault." Doc. No. 30-1, ¶ 182.

No such legal duty exists. The assertion, in fact, directly contradicts extant and binding state law.[24]

Schools are *not* insurers of student safety or happiness. *Bumpous o/b/o A.B. v. Tishomingo Cnty. Sch. Dist.*, 391 So. 3d 257, 261 (Miss. Ct. App. 2023). The law does not impose a duty to guarantee anything; not emotional or physical safety or happy experiences or only supportive and well-meaning friends. Nothing can guarantee that and the law does not attempt to compel the impossible.

Mississippi law provides *only* that a school district is tasked with "exercising ordinary care, of reasonable prudence, or of acting as a reasonable person would act under similar circumstances." *Id.*

---

[24]It should not need to be said that private citizens, particularly minors, probably don't have their own policies and procedure, once again illustrating the dispositive problems associated with shotgun pleadings.

**But** a school district has **no duty whatsoever** to students when they have been dismissed for the day, are off school grounds and not attending a school district event. *Moss Point Sch. Dist. v. Stennis,* 132 So. 3d 1047, 1051 (Miss. 2014). Those times, those places, are the parents' responsibility.

A school district therefore has no legal duty, for example, to prevent one ten year-old girl from saying mean things to another ten year-old girl during a slumber party, at a private residence, at night, before the school year even begins, even if it was foreseeable. See Doc. No. 30-1, ¶ 42.[25]

It is an error of law to confuse or conflate the existence of a legally imposed duty with alleged "foreseeability," for the latter does not create the former.[26]    The law does not impose the duties the PSAC2 seeks to impose. In the absence of a legal duty, there can never be a breach, and never be liability. *Great Am. E & S Ins. Co. v. Quintairos, Prieto, Wood & Boyer, P.A.*, 100 So. 3d 420, 426 (Miss. 2012).[27]

And, of course, there is the ongoing problem of the PSAC2's shotgun nature. Here, it attempts to impose duties on minors and private persons, equally and without distinction, without ever providing any legal basis for such.

---

[25] If, as Plaintiff asserts, the conduct alleged was foreseeable by the School District when none of the minor girls had been under school supervision since school ended the previous spring, it was certainly foreseeable to the parents who saw their children every day and had the duty to act. Parents like Heather Wyatt, for instance.

[26] "The fact that a result may be foreseeable does not itself impose a duty in negligence terms." *Hill v. Moore*, 290 So. 3d 769, 775 FN 4 (Miss. Ct. App. 2020).

[27] "Stated another way, a plaintiff's negligence claim cannot survive unless the defendant had a duty to the plaintiff."

The PSAC2 therefore fails to state a claim upon which relief may be granted.  As the purported "duties" do not exist, no amount of amendment will cure the defect, rendering amendment futile.

## DAMAGES

The bulk of the damages requested are barred by law.  In the event any cause of action survives against the School District, the following damages are precluded and may not be either sought or awarded.

Punitive damages may not be assessed against a governmental entity at all in § 1983 claims. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

Neither punitive damages nor emotional distress damages are not recoverable under Title IX. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 216 and 230 (respectively) (2022).

Per statute, punitive damages, interest (whether pre- or post-judgment) and attorney's fees are barred and may not be recovered in any suit prosecuted under the Mississippi Tort Claims Act. Miss. Code. Ann. § 11-46-15(2).  See also, *Kelley, LLC v. Corinth Pub. Utilities Comm'n*, 200 So. 3d 1107, 1115 FN 7 (Miss. Ct. App. 2016).  As such, the prayer for such relief must be dismissed with prejudice or struck from the complaint.

## CONCLUSION

The PSAC2 fails to state a claim upon which relief may be granted for any of the purported causes of action.  Amendment is therefore futile and Plaintiff's untimely and unauthorized second motion to amend the complaint should be denied.

Respectfully submitted, this the 4th day of August, 2025.

OCEAN SPRINGS SCHOOL DISTRICT, OCEAN SPRINGS BOARD OF TRUSTEES, OCEAN SPRINGS SCHOOL DISTRICT SUPERINTENDENT


BY: _Allison P. Fry_____
ALLISON P. FRY, MSB 100725


STEVEN L. LACEY (MBN 99888)
Sherman & Lacey, LLC
P.O. Box 2681
Madison, MS 39130
Direct: (601) 750-3415
Email: slacey@shermanlaceylaw.com

ALLISON P. FRY, MSB 100725
Sherman & Lacey, LLC
504 Naples Road
Jackson, MS 39206
Tel:    (601) 519-7556
Email: afry@shermanlaceylaw.com


## CERTIFICATE OF SERVICE

I, Allison P. Fry,  do hereby certify that I have this day caused to be served a true and correct copy of the foregoing document via the Court's Electronic Case Filing system to all counsel of record registered to receive such notices.


/s/ Allison P. Fry_____
ALLISON P. FRY, MSB 100725